# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF INDIANA, ) ) ) Plaintiffs, ) ) vs. ) ) CLEVELAND-CLIFFS BURNS ) HARBOR, LLC and CLEVELAND- ) CLIFFS STEEL LLC, ) ) Defendants. ) | Cause No. 2:22-CV-26-PPS-JEM |

## OPINION AND ORDER

Plaintiffs, the United States, on behalf of the U.S. Environmental Protection Agency and the State Indiana, on behalf of the Indiana Department of Environmental Management jointly request that the Court approve, sign, and enter the proposed Consent Decree in this case.  [DE 8.]  The consent decree will resolve alleged violations under several environmental statutes relating to a steel manufacturing and finishing facility in Burns Harbor, Indiana, owned and operated by Cleveland-Cliffs Burns Harbor LLC and its corporate parent, Cleveland-Cliffs Steel LLC. [Compl., DE 1.]  The consent decree will also resolve the claims of the citizen groups Environmental Law & Policy Center and Hoosier Environmental Counsel also before me in *Environmental Law & Policy Center and Hoosier Environmental Council v. Cleveland-Cliffs Burns Harbor LLC and Cleveland-Cliffs Steel LLC*, Case No. 2:19-cv-473 (N.D. Ind filed 12/11/19).

I have carefully reviewed the memorandum in support of the motion to approve the consent decree [DE 9], along with the proposed consent decree itself [DE 9-1], the redlined version of the decree [DE 9-2], and the one public comment submitted by the town of Ogden Dunes [DE 9-3]. The public comment came after the U.S. Department of Justice gave proper notice of the proposed settlement in the Federal Registrar. For the reasons set forth below, I find the consent decree is fair, reasonable, and consistent with the underlying statutes as well as the public interest.

**Background**

As alleged in the complaint, the Burns Harbor Facility is one of the largest fully integrated steel mills in North America, located in Burns Harbor, Indiana, on Lake Michigan and directly adjacent to the Indiana Dunes National Park. The Facility was previously owned and operated by ArcelorMittal, including at the time of the August 2019 spill described herein. But Cleveland-Cliffs completed a full acquisition of ArcelorMittal (including the Facility in Burns Harbor) on December 9, 2020. The Facility uses water for a number of steelmaking and pollution-control operations. The Facility's National Pollutant Discharge Elimination System ("NPDES") permit, under the Clean Water Act ("CWA"), authorizes it to discharge treated wastewater, stormwater, and non-contact cooling water from the Facility's outfalls pursuant to enumerated conditions.

The alleged violations are spelled out in detail in the complaint [DE 1 at 12-37] as well as the memorandum in support of the motion to enter consent decree [DE 9 at 3-5].

For present purposes, it is enough to say that in August 2019, the facility suffered a number of equipment and operational failures, which led to millions of extra gallons of high-ammonia and high-cyanide water being discharged into the East Branch of the Little Calumet River, and eventually into Lake Michigan.  There were a number of permit violations, numerous fish were killed, and beaches were closed for seven days. *Id.*

### The Consent Decree

The terms of the proposed consent decree were negotiated at arms-length, over many months, with apparent substantial give-and take by experienced environmental lawyers and technical experts representing all parties.  During the early stages of the investigation, there was a root cause failure analysis for the August 2019 incident. Cleveland-Cliffs implemented the report's recommended actions prior to the consent decree being finalized, and the decree requires the company to maintain the key equipment and alarms. [Consent Decree, DE 9-1, ¶ 9.]

It also requires compliance with a Maintenance Plan, covering weekly (or more) inspections.  If any issues are found, Cleveland-Cliffs is required to carry out corrective actions to fix the problems. [*Id.* ¶ 10 and App. 1.]   The consent decree additionally requires Cleveland-Cliffs to treat pollution from its blast furnaces during normal operations. [*Id.* ¶ 8.a.]  The decree includes others measures to ensure that Cleveland-Cliffs is maintaining the standards of the CWA, even in an emergency situation like the one in August 2019. [*Id.* ¶¶ 12, 13.]  In addition, the consent decree requires certain

improvements to operations and compliance at the facility. [*Id.* ¶¶ 15-16, 18, 20-25.] It also includes several measures for public notification in the event of any future exceedances. [*Id.* ¶¶ 27-28.]

Performance of two state-administered environmentally-beneficial projects are also mandated by the consent decree, including Cleveland-Cliffs will donate 127 acres of land abutting the Indiana Dunes National Park to a qualified land trust organization for permanent conservation protection. [*Id.* ¶¶ 47-48.]

In terms of payment of response costs and the civil penalty, the consent decree requires Cleveland-Cliffs to pay a $3 million civil penalty, to be split evenly between the United States and Indiana. [*Id.* ¶¶ 41-42.] Cleveland-Cliffs will also fully reimburse the Governments' emergency response costs: $10,025.37 to the United States and $37,650 to Indiana. [*Id.* ¶¶ 31-32.]

In deciding whether to approve of the consent decree before me, I keep in mind the following standards:

> Approval of a consent decree is a judicial act committed to the sound discretion of the district court. A district court reviews a consent decree to determine whether it is fair, adequate, reasonable, and consistent with applicable law. Of particular importance in that analysis is determining whether a proposed decree adequately protects and is consistent with the public interest.
>
> In analyzing the decree before it, the Court should be aware of the policy favoring approval. Public policy strongly favors voluntary settlement of disputes without litigation. And that policy is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal agency, like the EPA, which enjoys substantial expertise in the environmental field.

> But that deference to the Government's judgment should by no means be a rubber stamp. Instead, the Court must conduct an individual evaluation based on the particular facts of the case but with caution not to substitute its judgment for that of the parties or engage in the type of detailed investigation that would be required if the parties were trying the case.

*United States, et al. v. U.S. Steel Corp.*, No. 2:18-cv-127, 2021 WL 3884852, at *6 (N.D. Ind. Aug. 30, 2021) (citations omitted). Additionally, courts examine whether the decree is both procedurally and substantively fair. *United States v. BP Exploration & Oil Co.*, 167 F.Supp.2d 1045, 1051 (N.D. Ind. 2001). To make this determination, I can look to factors such as "the strength of plaintiff's case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991).

Here, I find the consent decree is procedurally fair. It is the result of good faith and contested, arms-length bargaining between the Government Plaintiffs, Defendants, and Citizen Plaintiffs over the course of a number of months, and reflects true negotiated compromises by all parties. *See U.S. Steel Corp.*, 2021 WL 3884852, at * 8. Plus the parties solicited, evaluated, and made changes based on the one public comment.

I also find the consent decree is substantively fair. It requires Defendants to pay a substantial civil penalty, as well as implement significant pollution control measures to reduce cyanide and ammonia pollution. The Government Plaintiffs considered the statutory penalty factors in setting a civil penalty amount, and I believe the

5

"Government Plaintiffs, with their flexibility and expertise on these topics as well as their understandable decision to settle instead of pursuing further litigation [have] sufficiently justified [the civil penalty calculation] and weighed the relative strength of their case in arriving at a substantively fair amount." *Id.* at 10. Although in its public comment, the Town of Ogden Dunes suggests that civil penalties in environmental cases "are simply never high enough to deter future actions and incidents" [DE 9-3 at 2], the consent decree here includes appropriate civil penalties as well as stipulated penalties for failing to comply with the requirements of the compliance measures of the decree, as well as requiring Defendants to reimburse the Government for their costs incurred in responding to the August 2019 event. The stipulated penalty amounts and response costs reimbursement both "contribute to the decree's substantive fairness." *U.S. Steel Corp.*, 2021 WL 3884852, at *10. As does the extensive injunctive relief (the agreement to implement new and permanent treatment systems to address ammonia and cyanide pollution, increase the reliability of the facility's wastewater systems, and respond quickly and effectively to any future emergency situations).

The consent decree is also consistent with the goals of the environmental statutes, and it is in the public interest. It includes strict and detailed requirements related to pollution control, operation and maintenance of the facility, and monitoring and reporting requirements, which should advance the goal of reducing pollution and protecting the environment. *See United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 281 (1st Cir. 2000). It furthers the objectives of the CWA by

6

requiring Defendants to conduct additional monitoring, maintenance, and pollution reduction that will help prevent future spills and promote overall compliance with the CWA and the NPDES permit.  It also furthers the goals of CERCLA and EPCRA by "ensur[ing that] accurate, reliable information on the presence and release of toxic chemicals is compiled and made available at a reasonably localized level." *U.S. Steel Corp.*, 2021 WL 3884852, at *15.  Finally, the decree is in the public interest, requiring detailed reporting, posted to IDEM's Virtual Filing Cabinet, and accessible to the public. The public will also benefit from the two environmentally-beneficial projects, including the large donation of land.

## Conclusion

For all of these reasons, I find the consent decree is fair, reasonable, consistent with the goals of the environmental statutes, and in the public interest.  The Motion to Approve Consent Judgment [DE 8] is GRANTED.  I approve of, and will sign the consent decree [DE 9-1] and enter the finalized consent decree on the docket.


ENTERED: May 6, 2022.

                                       s/   Philip P. Simon
                                      PHILIP P. SIMON, JUDGE
                                      UNITED STATES DISTRICT COURT